UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONALD E. HOLLINS,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>D. RHODES, et al.,<br><br>　　　　Defendants. | Lead Case: 1:20-cv-00692-DAD-EPG (PC)<br><br>Member Case: 1:20-cv-00775-DAD-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS ACTION BE DISMISSED, WITH PREJUDICE, FOR FAILURE TO STATE A CLAIM, FAILURE TO PROSECUTE, AND FAILURE TO COMPLY WITH COURT ORDER<br><br>(1:20-cv-00692-DAD-EPG (PC) ECF NO. 1)<br><br>TWENTY-ONE DAY DEADLINE |

Plaintiff Donald E. Hollins ("Plaintiff") is a state inmate proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed two substantially similar actions, each of which concerned being denied non-contact visits as a result of an earlier arrest. The first, case number 1:20-cv-00692-EPG (PC) ("692 Case"), was filed on May 18, 2020. (692 Case ECF No. 1). The second, case number 1:20-cv-0775-BAM (PC) ("775 Case"), was filed June 3, 2020 (775 Case ECF No. 1). On June 12, 2020, the Court consolidated the two cases, ordered the 692 Case to be the lead case, and labeled as member case and closed the 775 Case. (692 Case ECF No. 8).

///

The Court entered a screening order on September 3, 2020. (692 Case ECF No. 10).[1] The Court found that Plaintiff failed to state a claim. (*Id.*). The Court gave Plaintiff thirty days from the date of service of the order to file an amended complaint or to notify the Court that he wants to stand on his complaint, subject to the Court issuing findings and recommendations to a district judge consistent with the screening order. (*Id.* at 12-13). The Court warned Plaintiff that "[f]ailure to comply with this order may result in the dismissal of this action." (*Id.* at 13)

The thirty-day period has expired, and Plaintiff has not filed an amended complaint or otherwise responded to the Court's order. Accordingly, for the reasons described in the screening order (ECF No. 10) as well as the reasons set forth below, the Court will recommend that Plaintiff's case be dismissed for failure to state a claim, failure to prosecute, and failure to comply with a court order.

## I. SCREENING REQUIREMENT

The Court is required to screen complaints brought by inmates seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the inmate has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). As Plaintiff is proceeding *in forma pauperis*, the Court may also screen the complaint under 28 U.S.C. § 1915. "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell*

---

[1] The Court screened the complaint in the 775 Case because it was a photocopy of the complaint in the 692 Case, but the pages were in a more logical order and it contained additional exhibits. The Court also noted it was filed more recently. Hereinafter in this findings and recommendations, all references to Plaintiff's complaint will be to the 775 Case's complaint unless otherwise specified. However, hereinafter, all ECF references refer to filings in the 692 Case because that is the lead case.

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting this plausibility standard. *Id.* at 679. While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (citation and quotation marks omitted). Additionally, a plaintiff's legal conclusions are not accepted as true. *Iqbal*, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (holding that pro se complaints should continue to be liberally construed after *Iqbal*).

## II. ALLEGATIONS IN THE COMPLAINT

Plaintiff's complaint alleges as follows:

On August 8, 2017, Plaintiff went before the Unit Classification Committee (UCC) for a determination of his status as an inmate. By this time, he had been in prison for four years "without serious disruptive prison behavior." Defendants D. Rhodes ("Rhodes") and S. Taporo ("Taporo"), both correctional counselors at the California City Correctional Facility, prevented Plaintiff from speaking about his satisfactory prison conduct and behavior. Plaintiff wanted and expected them to consider his favorable conduct pursuant to 15 CCR § 3375(b) and in light of the Proposition 57 law. Plaintiff sought to have his "P-Code" removed and to be considered for camp placement or a lesser-restricted facility placement.

During the hearing the UCC members brought up an alleged, unadjudicated, ten-year-old, judicially dismissed oral copulation charge under Penal Code § 288(c)(1). The charge was from 2006 and he was never convicted. The local district attorney dismissed the alleged offense and expressed to Plaintiff it would never be brought up again. Using that charge, they denied Plaintiff visitation with his minor child.

Rhodes told Plaintiff (apparently during the hearing) that "he needs to be quiet before we put an 'R-Suffix' on you." Rhodes called Plaintiff "Pee Wee," which was his nickname / moniker in the dismissed case. This "[s]ubject[ed] me to harm for my safety[.]"

Plaintiff sought to appeal the UCC members' conduct in a grievance. Defendant N. Welch ("Welch"), another correctional counselor, refused to process the appeal and cancelled it. The cancellation notice claimed Plaintiff's appeal was untimely. However, Welch incorrectly thought Plaintiff was appealing his February 28, 2014 UCC ruling. Plaintiff appealed but his appeal was cancelled. Welch discussed the issue with Plaintiff and explained his interpretation of the regulations concerning grievances; Plaintiff disagrees with Welch's interpretation. Plaintiff believes Welch's interpretation "amounted to a discriminatory act, fraud, or an unfair or unlawful business practice, undermining his duty to adequately understand the [CDCR's] Director's regulations, state and federal law on the issue." Plaintiff followed the regulations to contest the improperly cancelled appeal. His appeals were subsequently denied—including by Defendant M. Voong ("Voong"), Chief of the Office of Appeals, who denied Plaintiff's third-level appeal.

Plaintiff alleges his status determination is based on a past sex-related conviction. However, he was not so convicted. Rhodes, Taporo, Welch and Voong failed to acknowledge that a close look at Defendant's May 2, 2013 CDC-128-B Chrono, "which suggest[s] prohibiting visiting restriction of 'any minor' contain an exception that clarification from the sentencing court was required before the applicability of Pen. Code § 1202.05 could be legally enforced by each defendant."

### III. SECTION 1983

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979*)); see also Chapman v. Houston Welfare Rights Org*., 441 U.S. 600, 618 (1979); *Hall v. City of Los Angeles*, 697 F.3d 1059, 1068 (9th Cir. 2012); *Crowley v. Nevada*, 678 F.3d 730, 734 (9th Cir. 2012);

*Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under § 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *see also Marsh v. Cnty. of San Diego*, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" *Preschooler II v. Clark Cnty. Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Preschooler II*, 479 F.3d at 1183 (quoting *Johnson*, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." *Arnold v. Int'l Bus. Mach. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981); *see also Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008).

Additionally, a plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. *Iqbal*, 556 U.S. at 676-77. In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691, 695 (1978).

Supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged. *Iqbal*, 556 U.S. at 676-77; *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978). To state a claim for relief under § 1983 based on a theory of supervisory liability, a plaintiff must allege some facts that would support a claim that the supervisory defendants either personally participated in the alleged

deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implement[ed] a policy so deficient that the policy itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (citations and internal quotation marks omitted); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). For instance, a supervisor may be liable for his "own culpable action or inaction in the training, supervision, or control of his subordinates," "his acquiescence in the constitutional deprivations of which the complaint is made," or "conduct that showed a reckless or callous indifference to the rights of others." *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991) (internal citations, quotation marks, and alterations omitted).

## IV. ANALYSIS OF PLAINTIFF'S CLAIMS

### A. Constitutional Right to Family Visits

Plaintiff appears to seek contact visits with his minor child. Exhibit A, the classification committee chrono about which he complains, states that "Subject is ineligible for Contact Visits with Minors, per CCR, Title 15, Section 3173.1. PC 288A (C) (1) Oral Cop w/ person under 14 Yr." The cited regulation provides that inmates who are charged, but not convicted, of certain sex offenses may be prevented from having *contact* visits with minors:

> (e) When an inmate has been arrested, but not convicted, of any crime involving a minor victim included in this Section, a classification committee shall determine whether all visitation with a minor(s) is to be limited to non-contact status. Unless otherwise prohibited, the inmate's visiting status shall be unrestricted until a classification committee has done the following:
> (1) Made a case-by-case determination whether the inmate poses a threat of harm to minor visitors in contact visitation.
> (2) Considered the circumstances of the misconduct involving a minor victim in determining whether the inmate poses a threat of harm to minor visitors in contact visitation. In making its determination, the classification committee shall consider, but is not limited to, arrest reports, probation officer reports, court transcripts, parole revocation transcripts.
> (f) If a classification committee, when making a decision regarding the visiting status of an inmate described in (e) above, determines that the inmate will pose a threat of harm to minor visitors in contact visitation, it will order all the inmate's visitation with minors be restricted to non-contact visiting status.

15 C.C.R. § 3173.1(e)-(f). Thus, the regulation at issue does not deny an inmate from having any visitation with his minor children. Rather, it limits all such visitation "to non-contact visiting

status." 15 C.C.R. § 3173.1(f).

To the extent Plaintiff seeks contact visits, "it is well-settled that prisoners have no constitutional right while incarcerated to contact visits or conjugal visits." *Gerber v. Hickman*, 291 F.3d 617, 621 (9th Cir. 2002); *accord Dunn v. Castro*, 621 F.3d 1196, 1202 (9th Cir. 2010) (same, quoting *Gerber*); *Barnett v. Centoni*, 31 F.3d 813, 817 (9th Cir. 1994) ("Barnett contends that the district court erred by dismissing his claim that he had a right to contact visitation privileges. We disagree. In *Toussaint v. McCarthy,* this court held that prisoners had no constitutional right to such privileges. 801 F.2d 1080, 1113–14 (9th Cir.1986). Therefore, the district court properly dismissed this claim." (citation shortened)).

Courts have upheld prohibitions on contact visits with minors under section 3173.1. *See, e.g., Shallowhorn v. Molina*, 572 F. App'x 545, 547 (9th Cir. 2014) (unreported) (where prisoner prohibited from receiving visits under section 3173.1(d), holding "district court properly dismissed the Substantive Due Process and First Amendment claims based on the continued restriction on contact visitation with minors because inmates possess no constitutional right to contact visitation"); *Knox v. Biter*, No. 1:18-CV-00761-AWI-SAB (PC), 2018 WL 4039971, at *3 (E.D. Cal. Aug. 22, 2018), *report and recommendation adopted*, 2018 WL 6573225 (E.D. Cal. Dec. 13, 2018) ("Plaintiff contends that he has been denied contact visitation with any minor . . . . Plaintiff fails to state a cognizable due process claim because he has not established a protected liberty interest in such contact visitation. Indeed, Plaintiff has not been denied visitation as he is allowed non-contact visitation with all minors. Plaintiff's claim based on the denial of contact visitation with minors pursuant to Title 15 of the California Code of Regulations Section 3173.1 . . . fails to allege a violation of right protected by the Constitution or federal statute." (citing *Valdez v. Woodford*, 308 Fed. App'x. 181, 182-83 (9th Cir. 2009) (parenthetical citation omitted)); *Brooks v. Macomber*, No. 2:14-CV-0730-TLN-AC, 2014 WL 4545951, at *2–3 (E.D. Cal. Sept. 12, 2014) (finding plaintiff failed to state a claim because no constitutional right to contact visits where plaintiff denied contact visits with minor family members under section 3173.1).

///

Here, Plaintiff alleges that he has been denied contact visitation with his minor child under 15 C.C.R. § 3173.1. However, under the authority above, there is no constitutional right to contact visitation with minor children. Accordingly, Plaintiff has failed to state a claim as to contact visits.

The Court notes that Plaintiff has not alleged he has been denied all visitation with his minor child. Such allegations are analyzed differently. *See Overton v. Bazzetta*, 539 U.S. 126, 136-37 (2003) (although finding prisoners had no right to noncontact visit in the instant case, noting if the restriction "were applied in an arbitrary manner to a particular inmate, the case would present different considerations"); *White v. Pazin*, 587 F. App'x 366, 367 (9th Cir. 2014) (unpublished) ("White alleged that he could not see his children because the jail did not permit visitation by minors under age 12. These allegations, liberally construed, were sufficient to warrant ordering defendants to file an answer. Accordingly, dismissal of White's claims relating to his visitation rights was premature, and we vacate and remand for further proceedings." (internal quotation marks and citations omitted)); *Dunn v. Castro*, 621 F.3d 1196, 1205 (9th Cir. 2010) (noting the "constitutional question" of "whether . . . a lawfully incarcerated prisoner who was reasonably believed to have engaged in improper conduct with a minor [ ] could be temporarily deprived of his visitation privileges with his own children . . . is by no means open and shut"); *Madrid v. H. Anglea*, No. 1:19-cv-01456-JLT (PC), 2020 WL 1689709, at *4 (E.D. Cal. Apr. 7, 2020) (requiring answer where plaintiff alleged he was denied all visitation with his wife for a period of eight years under 15 C.C.R. § 3176).

**B.     Equal Protection Claims**

The Equal Protection Clause requires that persons who are similarly situated be treated alike. *City of Cleburne v. Cleburne Living Center, Inc.,* 473 U.S. 432, 439 (1985); *Hartmann v. California Dep't of Corr. & Rehab.,* 707 F.3d 1114, 1123 (9th Cir. 2013); *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013); *Shakur v. Schriro*, 514 F.3d 878, 891 (9th Cir. 2008). To state a claim, Plaintiff must show that Defendants intentionally discriminated against him based on his membership in a protected class, *Hartmann*, 707 F.3d at 1123 *Furnace*, 705 F.3d at 1030, *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003), *Thornton v. City of St. Helens*, 425 F.3d

1158, 1166-67 (9th Cir. 2005), *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001), or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, *Engquist v. Oregon Department of Agr.*, 553 U.S. 591, 601-02 (2008), *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000), *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 592 (9th Cir. 2008), *North Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008).

Inmates are not a protected class. In *Webber v. Crabtree*, 158 F.3d 460 (9th Cir. 1998), a group of inmates alleged a regulation that prohibited them, but not other prisoners, from smoking violated their equal protection rights. It did not violate those rights because being an inmate is not a protected class and the regulations were rationally related to a legitimate state interest:

> The inmates, however, are not members of a suspect class. The inmates have also failed to show that smoking is a fundamental right. Thus, to meet the requirements of the Equal Protection Clause, the prison officials must show only that the ban bears a rational relation to a legitimate governmental objective.
>
> The prison officials correctly assert that the Bureau of Prisons has a legitimate objective of protecting the health and safety of inmates and staff by providing a clean air environment. The district court, therefore, did not err by finding that the smoking ban is rationally related to this legitimate governmental objective.

*Id.* at 461 (citations omitted).

Likewise, here, Plaintiff does not allege he is being discriminated on account of his membership in a protected class, such as due to his race, *see Washington v. Davis*, 426 U.S. 229, 239 (1976) ("The central purpose of the Equal Protection Clause of the Fourteenth Amendment is the prevention of official conduct discriminating on the basis of race."). To the extent his allegations concern being discriminated on account of being an inmate, or an inmate with a certain arrest history, his Equal Protection Clause claim fails. Being an inmate, or an inmate with a certain arrest history, is not a suspect class. *See also Shallowhorn*, 572 F. App'x at 547 (affirming district court's dismissal of inmate's Equal Protection Clause claim because "'inmates convicted of violating PC Section(s) 187, 269, 273a, 273ab, or 273d [murder, rape, or child abuse] when the victim is a minor,' 15 CCR § 3173.1(d), does not constitute a protected class, and California had a rational basis for promulgating the regulation at issue" (brackets in

original)). Therefore, Plaintiff has not stated a claim under the Equal Protection Clause.

### C. Claims Against Processors of Appeals

There is no constitutional right to a prison or jail administrative appeal or grievance system in California, and therefore no due process liability for failing to process or decide an inmate appeal properly. *See Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988). Thus, to the extent Plaintiff seeks relief against any defendants merely for processing his grievances or administrative appeals, Plaintiff fails to state a claim.

### D. Failure to Protect

Plaintiff's complaint refers to a threat that Defendants would label Plaintiff with an R-suffix under 15 C.C.R. § 3377.1(b), which is a label "affixed to an inmate's custody designation to ensure the safety of inmates, correctional personnel, and the general public by identifying inmates who have a history of specific sex offenses as outlined in Penal Code (PC) Section 290." 15 C.C.R. § 3377.1(b). Plaintiff also alleges that Rhodes called him "Pee Wee" during his hearing and that doing so "[s]ubject[ed] [him] to harm for his safety[.]"[2] Reading Plaintiff's complaint liberally, the Court will evaluate both claims as failure-to-protect claims.

To establish a failure to protect claim, the prisoner must establish that prison officials were deliberately indifferent to a sufficiently serious threat to the prisoner's safety. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "'Deliberate indifference' has both subjective and objective components." *Labatad v. Corr. Corp. of Am.*, 714 F.3d 1155, 1160 (9th Cir. 2013). The prisoner must show that "the official [knew] of and disregard[ed] an excessive risk to inmate ... safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference." *Farmer,* 511 U.S. at 837. "Liability may follow only if a prison official 'knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.'" *Labatad,* 714 F.3d at 1160 (quoting *Farmer,* 511 U.S. at 847).

---

[2] Plaintiff cites *Ellis v. Johnson*, 792 F. App'x 453 (9th Cir. 2019) with respect to this allegation. It does not appear that *Ellis* is relevant to this claim.

Plaintiff does not allege that there was a serious threat to his safety. He was never given the R-suffix. Plaintiff does not allege that others heard him called Pee Wee. He does not allege that anyone else would have known what "Pee Wee" meant. Plaintiff does not allege that Rhodes was aware that calling him Pee Wee would create a substantial risk of serious harm. Plaintiff does not allege Rhodes ever failed to take reasonable measures to abate that harm. Therefore, Plaintiff has failed to state a claim for failure to protect.

### E. State Law Claims

Plaintiff alleges that various CDCR regulations were violated throughout this process. Plaintiff fails to state any claim under any such regulation. Inmates do not have independent rights to sue under these regulations. *Patterson v. Harrington*, No. 1:12-CV-00440-MJS PC, 2013 WL 3212413, at *5 (E.D. Cal. June 24, 2013) ("The existence of regulations governing the conduct of prison employees does not necessarily entitle an inmate to sue civilly for their violation. The Court has found no authority to support a finding of an implied private right of action under Title 15[.]"); *Silva v. Blagg*, No. CV 16-960-R (AGR), 2019 WL 1744216, at *4 (C.D. Cal. Jan. 18, 2019), *report and recommendation adopted,* 2019 WL 3064467 (C.D. Cal. Mar. 13, 2019) (same); *Johnson v. Pamplin*, No. 17CV560-BAS (BLM), 2017 WL 5623578, at *7 (S.D. Cal. Nov. 21, 2017), *report and recommendation adopted,* 2018 WL 316974 (S.D. Cal. Jan. 8, 2018) (same and citing sources).

## V. FAILURE TO FILE RESPONSE TO SCREENING ORDER

Despite the Court's order for Plaintiff to file a response within 30 days of the order, Plaintiff failed to file any response to the Court's screening order.

"In determining whether to dismiss a[n] [action] for failure to prosecute or failure to comply with a court order, the Court must weigh the following factors: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to defendants/respondents; (4) the availability of less drastic alternatives; and (5) the public policy favoring disposition of cases on their merits." *Pagtalunan v. Galaza*, 291 F.3d 639, 642 (9th Cir. 2002) (citing *Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992)).

///

"'The public's interest in expeditious resolution of litigation always favors dismissal.'" *Id.* (quoting *Yourish v. California Amplifier*, 191 F.3d 983, 990 (9th Cir. 1999)). Accordingly, this factor weighs in favor of dismissal.

As to the Court's need to manage its docket, "[t]he trial judge is in the best position to determine whether the delay in a particular case interferes with docket management and the public interest…. It is incumbent upon the Court to manage its docket without being subject to routine noncompliance of litigants...." *Pagtalunan*, 291 at 639. Plaintiff has failed to respond to the Court's screening order. This failure to respond is delaying the case and interfering with docket management. Therefore, the second factor weighs in favor of dismissal.

Turning to the risk of prejudice, "pendency of a lawsuit is not sufficiently prejudicial in and of itself to warrant dismissal." *Id.* at 642 (citing *Yourish*, 191 F.3d at 991). However, "delay inherently increases the risk that witnesses' memories will fade and evidence will become stale," *id.* at 643, and it is Plaintiff's failure to prosecute and to comply with a court order that is causing delay. Therefore, the third factor weighs in favor of dismissal.

As for the availability of lesser sanctions, at this stage in the proceedings there is little available to the Court which would constitute a satisfactory lesser sanction while protecting the Court from further unnecessary expenditure of its scarce resources. Considering Plaintiff's incarceration and *in forma pauperis* status, monetary sanctions are of little use. And, given the stage of these proceedings, the preclusion of evidence or witnesses is not available.

Finally, because public policy favors disposition on the merits, this factor weighs against dismissal. *Id.*

After weighing the factors, the Court finds that dismissal with prejudice is appropriate.

## VI. CONCLUSION AND ORDER

For the foregoing reasons, the Court HEREBY RECOMMENDS that:

1. This action be dismissed with prejudice for failure to state a claim, failure to prosecute, and failure to comply with a court order; and

2. The Clerk of Court be directed to close this case.

///

|   |   |
|---|---|
| 1 | These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within twenty-one (21) days after being served with these findings and recommendations, Plaintiff may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)). |

IT IS SO ORDERED.

Dated:   **October 19, 2020**          /s/ *Erica P. Grosjean*
                                       UNITED STATES MAGISTRATE JUDGE